Good morning, Your Honors. My name is Rochelle A. Fortier-Wadibia. I represent the petitioner in this matter, Baigalmaa Batsukh. She's present in the courtroom today. The position of the petitioner is, first of all, that the government has abandoned its legal arguments by failure to submit a brief before the Board of Immigration Appeals. There's no evidence in the record that they have submitted a brief, and they have offered no reason for their failure to submit a brief. We believe that we've been disadvantaged by not having heard their arguments at an earlier time in this proceeding. This story began in January 2002, and, of course, this ended around the contact of the lead petitioner, Baigalmaa Batsukh, who's present here today. The facts are really not in dispute here. Petitioner and her family have all been granted withholding of removal because the Board of Immigration Appeals reversed that denial for the petitioner at the Board. But what the Board failed to do was to follow the precedent of this Court, as set forth in Fogry and in Fajora, and find that there were changed circumstances in this case when the petitioner learned in January of 2010 that the person that she had reported and was under investigation was for corruption again threatened her. Well, they threatened the brother, didn't they? They did threaten the brother, but they also stated that they were going to find her wherever she was. But they didn't threaten her directly. They threatened her through the brother? That's correct. All right. They were speaking to the brother. How was that different from the threats which occurred in 2005 when she was run over by a car? Quite honestly, Your Honor, I don't see any difference in the threats. I think that what that goes to is that the petitioner, who had complete faith in her country and wanted to go back and work She was a professional, and she worked in a bank, and she wanted to go back. She did it once, and she held out under the hope that these things would disappear. And unfortunately, and this time, finally, in January of 2010, she recognized that when they said that they would find her through her brother, she abandoned that hope. And that's at the time that we would determine that changed circumstances occurred in this case. And then she determined that she needed to file her application. The question is that she has obviously been subjected to quite a few things in the earlier years. But under the legal standard, changed circumstances have that phrase in there that the application must be much stronger in order to support this late application. So why is the threat via the brother make her case much stronger at that point? Well, I think if we place ourselves in the minds of the respondent who continued to hold this faith that she could return to her country, at this particular point, it seems to me, and I believe, is that she determined that this was just the straw that broke the camel's back. This was just, for her, the last bad act. But isn't the standard that it has to be a material increase in the danger that occurred? Yes, Your Honor, that is correct. But it's just a continuation of the danger that she had been exposed to previously, right? Well, Your Honor, there were several gaps, as you know, in when these threats were to occur. The petitioner was very determined to push back and to fight back against, really, what were extraordinary obstacles that were placed in her path. And at this point in time, this final point when she, her brother, 10 years later, excuse me, in 2010, her brother conveyed this information, and those threats were the threats that we're looking to establish if there were changed circumstances. We know that under DOM, changed circumstances, these threats alone can constitute past persecution. And that, again, would even establish the ability for her to present a new claim. She, so finally, I think if we put ourselves in the mind of the petitioner, at this point in January 2010, she had to surrender to the fact that, yes, this was the last bad act that she was going to be able to tolerate. Those of us that are looking at it in retrospect, I think it's a little bit difficult for us to put ourselves in the mind of the petitioner as she was fighting for her career and for her own life in her home country. With respect to the, so we believe, and we agree with the dissent, because the Board of Immigration Appeals in the dissenting opinion has stated clearly that this would, this was a material change. That was the finding by the Board of Immigration Appeals, that this was a material change in the case that should have justified changed circumstances under both FACRI and VRHORA. In addition, we believe that the petitioner has a claim for, petitioner's daughter has a claim for asylum because of her status as a minor. Can I ask you a question about that? So the El-Hemry case, I'm trying to figure out where El-Hemry, the El-Hemry decision comes from that found that the minor, Masoub, I think it was, was his name, that he had a claim for asylum. But there's no real, no reasoning that I could find, and there was no precedent that I could find upon which that statement was made. Can you tell me where that comes from? I'm sorry, Your Honor. The El-Hemry decision. The El-Hemry decision, yes. Yeah. Where did that come from? Because I didn't see any precedent. I didn't see any reasoning for it. It just seems to me that it's there, but. Well, I think, well, we rely on that as the precedent that's been set by this Court. I know. And one said you don't have to look behind it, correct? Right. And so we're standing on that decision that this Court has determined is a reason to determine that she faced a legal disability. Some of the arguments that have been advanced, though. Counsel, what do you do with the 8 CFR 208.5A.5, which says that the statute of limitations called the one-year statute is told only as to unaccompanied minors? Because it seems to me that that wasn't even mentioned by Judge Hugg in the El-Hemry case. And don't we have to take some notice of the regulations? The regulations are very clear, but the regulations also state that those circumstances may include, but are not limited to, those factors that are enumerated in the regulations. And then with the broader interpretation that has been given by El-Hemry, then we believe that, of course, that this is not a stretch. This is not a stretch to recognize the legal disability of a minor. The El-Hemry case doesn't discuss that as your rule of interpretation, including other things than unaccompanied minors. No, but that's the position that we are in. It totally ignores the Code of Federal Regulations. Can we do that? Well, I think that we're not ignoring the Code of Federal Regulations. I think the Code of Federal Relations is giving us the guidance that we need to look to. And it mentions unaccompanied minors. We have a rule of interpretation in this circuit that is called, in Latin, expressio unias. If it's mentioned, it means to exclude accompanied minors. I think that maximum reference to one thing, exclusion of all other things, has its place. But in this circumstance, I don't, because the regulations themselves state that those circumstances may include but are not limited to those items that are referenced below, that we certainly have that has, in my view, is the signal to the Court to be able to make the reasonable, the reasonable interpretations based on the facts of the case that are presented before the Court. And our position Would you like to reserve your remaining time? Yes, Your Honor. Thank you. Ms. Clay, can you address the first point that your learned opponent made, that you've waived your position because you didn't file a brief in the BIA? No, we did not waive our position before the BIA. What we did was we agreed with the immigration judge's decision below. So when the immigration judge granted her petitioner's withholding of removal and denied the BATSUG her withholding of removal claim, the Department of Homeland Security was fine with that particular decision. I'm before the Court today defending the Board's decision on its So you don't think that failing to file a brief in the BIA waives your position? No, it's a common practice for the Department of Homeland Security not to file a brief before the Court. I don't know if it's due to time constraints or whatever, but Is there a regulatory foundation for that position? No, but I do know that if the DHS had a position where they disagreed with the immigration judge, they would have been obliged to actually file and preserve their challenges to the immigration judge's decision before the Board. But when they don't disagree with the immigration judge, there's no need to actually preserve. And given the opportunity, I can maybe go back to my office and maybe find regulations for you to settle for the Court. It's just that often the petitioner, of course, is in a different position of disagreeing, but anytime some jot and tittle is not included in the brief of the petitioner, we have the government saying they waived it because they didn't put it in their BIA brief. So it's kind of a lack of symmetry here. Right. Well, the moving party always has the burden of proof. So if we had been the moving party before the Board, then we would have to make sure that that could be heard before this Court later on and vice versa. And so what about with respect to the child? Like you, I didn't find the precedent for the case, but what I will say is that based on my research, the enactment of the statute, the CFR 208.4A5, I think was born out of the Wilberforce, the accompanied minor act that came out that was trying to preserve children who were traveling into the United States from trafficking and all that kind of thing. So when you look at the regulations, it was actually enacted in 2009. So it wouldn't have applied to L. Henry. L. Henry came out in 2004. That said, because petitioner filed her application in 2010 after the enactment of the regulation, then the regulation actually applies to the minor child's claim. And again, the minor exception to the statute has never been created prior to now. So if the Court would allow me to speculate, which we're not normally supposed to do, I think that the potentially, without the rationale from the immigration judge, without citations and not any analysis, we can't be sure whether or not there's a conflict between the two decisions. But what sort of came to mind was that prior to the enactment of the unaccompanied minor regulation, maybe the I.J., at her own discretion or his discretion, thought of a minor as an extraordinary circumstance when there was no exception carved in the statute. Could you address your colleague's point that the definition of exceptional circumstances lists a series of factors which is not meant to be exclusive? Correct. Agree with that? I do. But based on that one particular statement, they specifically expect you to have the child to be unaccompanied. And that is legal disability has to do with the competence of the child. And it makes sense that a child would be legally disabled. But if you're in the presence of your parent, you have someone that's there to actually vouch for your status or whatever your legal rights are before the agency. Why can't it be read to say that that's certainly an extraordinary circumstance because you lay it out, but it doesn't preclude other circumstances? That's true. And that other circumstance here would be unaccompanied child. Well, I agree with the general premise. But I think, like the Board said, minor status standing alone doesn't count. But there probably are situations where a minor plus some other factor would probably qualify under extraordinary circumstances statute. With regard to the changed circumstances issue, if you're finished with all your questions, I would like to state that the Board actually applied the correct legal standard when it denied petitioner's applications as untimely because she failed to establish a requisite change or extraordinary circumstance to excuse the filing deadline. The language in the statute actually states that the circumstances that create the exception have to be material and they have to affect the person's eligibility for asylum. That particular statute has been applied by the Ninth Circuit in those two cases, in Falkrie and in Vahora. And both of these decisions the Board relied on to support its decision. In Falkrie v. Mukasey, the petitioner entered the United States, but he didn't have an objectively reasonable fear of persecution. When he came to the country, he feared harm because he had been beaten up by the police in his country, but he wasn't beaten up based on his participation in a particular social group. So he came in, he intended to file, but he didn't have a valid basis to file. But shortly after these riots broke out, when the riots broke out, no, there weren't riots in this case, when the MFDC's headquarters was raided, the Senegalese government acquired membership information about him and other members of this opposition group. So based on the government's raid of the headquarters for the MFDC, the petitioner alleged that he feared persecution not only because he was a member, but now the government can find out that he's a member. And it had been alleged that persons who were members of MFDC who traveled outside of the government were actually doing it for purposes of raising funds for the group. And so his fear was that based on the fact that they now know or can find his name, that he's been away from the country, that he now has this reason to fear persecution. And the court in Falkring v. McCasey agreed. By taking a look at that, what you find is that the person initially had a subjective fear of harm. But once he expressed these new facts, the circumstances changed because now his fear now became objectively reasonable. And that was a specific statement that was made in the court. The other case that the board relied on was in Fajora. That case was just the complete opposite and more like the case present here. The petitioner in that particular case had an objectively reasonable fear of harm when he entered the United States. He had been individually harmed by the police and detained and beaten. What made the circumstances special in his case or changed was the fact that when the riots broke out, they were talking about the riots being the most worst or most dangerous in, like, two decades. And they also said that the riots impacted his family members. Like his house was burned down. The farmhouse was burned down. One of his brothers is missing. Another brother went in hiding. About 2,000 Muslims had been persecuted. A hundred thousand Muslims had been displaced and forced to live in camps. And so what you see in viewing or analyzing that particular case is that now you find a person who had an objectively reasonable fear of persecution based on their own individualized harm, but now he has a fear of persecution based on the ‑‑ I'm sorry. It's the when everybody else is being harmed. I can't think of the word right now.  It's widespread. So now he has more harm because if he goes back to his country, because he's a Muslim now, he's similarly situated to everybody else who's being beaten up and killed and everything in India. So based on those findings, I think that this court, the Ninth Circuit, has decided that what constitutes materially affecting an alien's eligibility for asylum is the ability to submit evidence that changes the status of their eligibility. So arguably it's sort of like what I would call a game changer. Maybe you were only 10% reasonably able to claim fear of persecution, but maybe new facts might make you 75% more likely to be injured or harmed. And if you look at the decision in Vahura, in several places they actually used the word substantially to describe the harm that the individuals fear. So based on the court's findings in Fakhri v. Mukasey and in Vahura v. Holder, the board reasonably determined that materially affecting eligibility for asylum means harm that increases the person's risk of persecution or substantially makes it more likely that he's entitled to relief. Well, in fact, your first sentence is precisely what happened here. It increased the risk of harm. And she's already been subjected to a long parade of horribles. But now we realize it's not just restricted to that time frame, but fast forward a little, there doesn't seem to be the ability to just sort of fade into the economy or into the environment with this additional ability, which is I found you, Mr. Brother, and I will find her. So it's hard to say why that isn't an increased risk. I think it strengthens her claim, but it doesn't change her eligibility for asylum. You know what I mean? She qualified for withholding of removal, and that particular factor doesn't change her withholding of removal. The only thing that she's not getting now is the asylum because she failed to file within a certain period of time. Right. But if she had, if it strengthens her asylum claim. But it doesn't alter it. And I think that's where, when you compare the cases of Fakhri v. Mukasey and Vahura, the court keeps saying substantially alters the eligibility of the person's asylum. So simply, and not only that, the petitioner actually was told before she left that she was going to be harmed. I mean, that her family members were going to be injured. So the fact that he followed up on a harm that he actually alleged to her before, that isn't a change either. It's just him following through. Well, I guess the question is, it's like when you go to criminal trial, if you have one piece of evidence, sometimes two is better, you have a stronger case, even if one could do it. Now we're in a civil context, isn't the same thing true that taking a look at what the dissenting board member said from the BIA, it said that this qualifies as a change. Materially strengthened. It changed circumstance. It constitutes a changed circumstance because it did materially strengthen the claim. That's really the main argument here, isn't it? With the definition of materially altering, that's true. But even assuming that both of these propositions are true, based on a substantial evidence standard of review, this court should still affirm the board's determination because as seen by these board members, people can have inconsistent interpretations of the same set of facts. Any more questions? It appears not. Thank you. Thank you. You have some time for a rebuttal. Thank you, Your Honor. I'm not really seeing much daylight between myself and the attorney for the government if we agree that the threats that were advanced through January of 2010 materially strengthened the claim, because we know that under Fakhri and Vahura that that changed, that material changed, that point where we see that the claim is strengthened is the time that she determined that she was going to file for the asylum. That was in January of 2010. There was a reasonable time period thereafter, four months, for her to be able to seek out counsel, prepare her application, and have it filed in May of that same year. And again, with respect to the child, we do believe there that there is a legal disability and that the court is able to find here that, and consisting with the viewpoint of the dissenting opinion at the BIA that she was a minor and therefore would be entitled to file her own application, that would be considered timely under the regulation. Thank you. Thank you very much. Thank both counsel for your argument this morning. The case of Batsik v. Sessions is submitted.
judges: McKeown, Bea, Benitez